TEXAS PIPE LINE CO. et al. v. TULSA COUNTY EXCISE BOARD.

No. 33543. Nov. 16, 1948.

*199 P. 2d 822.*

Mastin Geschwind, of Oklahoma City, for plaintiffs in error.

Elmer W. Adams, County Atty., Tulsa County, and Hugh Webster, Asst. Co. Atty., both of Tulsa, for defendant in error.

WELCH, J. This action was instituted in the Court of Tax Review by the Texas Pipe Line Company, a cor-

poration, Mid-Continent Pipe Line Company, a corporation, and Stanolind Pipe Line Company, a corporation, against Tulsa county, Oklahoma, excise board in protest of 1.58 mills of the tax levy for the general fund of dependent school district No. 21, Tulsa county, charging that $697.50 of a $1,469.81 appropriation for payment of transfer fees of said district was made without authority of law and contrary to law.

The budget of school district No. 21 as approved by the excise board was offered in evidence. The parties stipulated "that the sum provided for the payment of transfer fees in this budget was arrived at by including $697.50, being the basic aid which this district would be entitled to receive, as a part of its minimum program income." The budget does not reflect that any item of income derived from "basic aid actual income allocated by the State Board of Education" was appropriated to finance the needs of the district's general fund.

The protest was denied and protestants appeal. Argument is presented upon three propositions: That there was a sufficient showing of a commitment by the governing board of the sum to be derived by the district from "basic aid" as to require the excise board to appropriate the same for payment of transfer fees; that the county excise board was without authority to appropriate for transfer fees any part of the district's funds not constituting a part of its minimum program income as defined by 70 O. S. Supp. 1947 §652.4; that a tax levy producing more money than is required to finance lawfully approved estimate needs is to such an extent illegal.

The protestee, defendant in error, in its brief, suggests that herein the excise board calculated minimum program and minium program income, and the excess of minimum program income over the cost of a minimum program was appropriated for payment of transfer fees. It is contended that basic aid —$697.50, in this case—could not lawfully be committed to finance the original budget, and was not so used, but was used solely and only for the purpose of arriving at the amount of minimum program income. It is contended that in the preparation of the original budget, basic aid is used solely and only for the purpose of calculation, and not as an estimated revenue in financing said original budget; that the statutes provide for the use of basic aid as a factor in calculating the maximum amount to be appropriated for transfer fees, and not that it be used to finance an appropriation as made in the budget.

70 O.S. 1941 §1037.2 provides:

"The annual estimate of each school district from which pupils have been transferred shall include a request to the county excise board to make the necessary appropriation for the payment of transfer fees payable by such district under the provisions of this Act."

It is provided by 70 O.S. Supp. 1947 §1037.7 that fees for transfers shall be based on the previous year's per capita cost of pupils in average daily attendance in the district to which transfer is made and the method of calculation and computation of per capita cost is therein set forth.

70 O.S. 1941 §1037.8 provides:

"Appropriations for transfer fees.— Any school district which, without making any appropriation for transfer fees, will qualify for State Aid, shall make no appropriation for transfer fees. Any school district which would qualify for State Aid, if an appropriation for transfer fees were made for the entire per capita cost of the receiving district, shall be required to appropriate for transfer fees only that part of the receiving district's per capita cost which is available for appropriation, after making an appropriation for maintenance of the home school in such district which, together with any cash funds the district is entitled to receive, will provide sufficient funds to maintain such school; provided, in no case

shall said funds so appropriated to maintain the home school exceed the cost of minimum program plus any local initiative the district is entitled to receive, as defined, by the State Aid law in force."

We think it clear that under section 1037.8, supra, the entire revenue of the school district available for appropriation to the general fund is to be taken into account in the determination of the amount available for appropriation for transfer fees; that when an appropriation has been made for the home school not in excess of the cost of a minimum program plus any local initiative the district is entitled to receive, the balance available for appropriation, if any, shall be appropriated for transfer fees.

70 O. S. 1947 Supp. § 652.4 provides:

"The amount of money that a school district may qualify for, which shall be designated as 'State Aid' under the provisions of this Act, shall be determined by subtracting the amount of the Minimum Program Income from the cost of the Minimum Program. The Minimum Program and Minimum Program Income shall be defined as follows:

"Minimum Program: . . .

"Minimum Program Income: . . ."

"Basic-aid actual amount allocated by State Board of Education" is included in the definition of minimum program income.

It is provided by 70 O.S. Supp. §652.5 that basic aid is to be apportioned only to those districts making a levy of 20 mills, the amount to be based on average daily attendance of the previous year and the equated valuation of the district as determined under the provision of the act.

70 O.S. Supp. §652.2 reads in part:

"(b) After the apportionment of State Aid has been made by the State Board of Education and certified to the County Treasurer and County Excise Board, it shall be the duty of the County Excise Board to make additional or supplemental appropriations in the amount so apportioned to finance the Minimum Program and for such other legal purposes as the governing board of the school district may request. . . ."

The section following 652.3 provides that upon the making of apportionments state warrants shall issue and be forwarded to the county treasurer who shall cash the same and within 15 days apportion the funds to the various districts as directed.

It is thus noted that basic aid cannot be apportioned until the school districts budget has been filed showing the required levy has been made and until the equated valuation of the district has been determined. It is noted that State Aid, and including basic aid, may not be appropriated by the school district until after apportionments are made and such apportionments necessarily are not made until after the district budgets have been made and filed.

In the arguments presented herein both parties discuss the use of a formula employing minimum program income in the determination of proper appropriation for transfer fees. We think it clear that the use of any calculated amount of basic aid or the use of any formula employing minimum program income by the county excise board in arriving at the amount required to be appropriated for transfer fees is not contemplated by section 1037.8, supra, and must result in error.

The effect of section 1037.8, in its application to a district required to make an appropriation in part payment of its transfer costs, is to require a determination by the county excise board of all the income of the district available for appropriation and after a deduction therefrom of the cost of maintaining a minimum program and the amount of its income not designated by statute as minimum program income (local initiative) the balance is the amount required to be appropriated for transfer fees.

The same effect and result is obtained by a subtraction of the cost of minimum

program from the minimum program income of such district. However, basic aid actual amount allocated is not known and available for appropriation at the time of preparation of the original budget. Such method of calculation of transfer appropriation requirement might well be the administrative practice of the state authority charged with the responsibility of paying from state funds the remainder of transfer fees costs above the required appropriation of the district. Such state authority would have before it the basic aid, actual amounts allocated to the district and have before it the actual amount of the minimum program income of the district and the cost of maintaining a minimum program in such district.

Any use of such formula by the county excise board would require a calculation of the basic aid expected as a part of minimum program income. Such calculation of basic aid expected must in addition to other factors include a reference to the percentage that the locally assessed valuation of the taxable property of the district bears to the equated valuation of the county. The requirement of the statute that the State Board of Education use each year an equated value of locally assessed valuations as a basis of apportionment of State Aid and basic aid and the method of determining such do not contemplate such computation by a county excise board or that such information as is necessary in making such computation will necessarily be compiled and available to the county board at the time such board is required to determine the transfer appropriations of school districts.

On the other hand, the revenue available for appropriations and the cost of a minimum program and the local initiative of each school district is known or the facts locally available to the county excise board at the time each governing board files its request for appropriations.

We are of the opinion that minimum program income as defined by statute, and as applicable to a particular school district, serves the purpose of directing the State Board of Education to a proper apportionment of "State Aid," but serves no purpose in the making of the district budget or in the determination of appropriations to be made for transfer fees by the county excise board.

The budget here involved reflects that the governing board listed 27 pupils for transfer to other mentioned districts. The excise board estimated the total per capita cost of the receiving districts to be $4,906.51. In response to the governing board's request that the excess of its minimum program revenue plus all surpluses, not needed to finance its minimum program costs be appropriated to finance transfer fees, the excise board appropriated $1,491.30 for transfers. From such evidence it is apparent that some appropriation for transfer fees was required although the budget does not reflect the cost of maintaining a minimum program in the home school.

The budget reflects that under the millage allocation by the excise board and by vote of the people of the district, an ad valorem tax levy for general fund purposes was authorized up to 23 mills. The proceeds of such a levy and the other sources of revenue shown as available for appropriation to the general fund, constitute the maximum amount available for appropriation to finance the general fund requirements of the district. Under section 1037.8, supra, after deduction of the cost of maintaining a minimum program in the home school plus any local initiative the district is entitled to receive from the maximum amount available for appropriation to general fund, the balance, if any, is the maximum amount authorized to be appropriated for transfer fees.

Whatever the cost of a minimum program in the home school, the inclusion of an item of expected income in ar-

riving at the appropriation for transfers, without taking such items into account in financing the budget, might be suggested as evidence that the appropriation was excessive, but in the absence of proof as to the cost of a minimum program the actual amount authorized by statute to be appropriated to transfer fees cannot be determined. An admission concerning the method used in calculating the appropriation, although such method of calculation was erroneous, does not in itself establish that the appropriation as made was in excess of that authorized by law. Upon the record before us, which does not contain the costs of maintaining a minimum program in the home school, it cannot be determined whether the appropriation for transfer fees was less than required by statute or in excess of the amount contemplated by the law. The effect of the request of the governing board to the excise board was to ask that an appropriation for transfer fees be made as required by law, upon determination of the amount of transfer fees payable for the number of pupils stated. The correctness or incorrectness of the appropriation made cannot be determined without reference to the factors above referred to and not shown in the record.

The correctness of the general fund appropriation and levy made therefor is not otherwise challenged. The evidence presented does not establish the grounds of protest.

The judgment denying the protest is affirmed.

DAVISON, V.C.J., and RILEY, BAYLESS, CORN, ARNOLD, and LUTTRELL, JJ., concur. HURST, C.J., concurs in result.